Good morning. I'm John Plagle. I represent the City of Menlo Park and the seven officers who have been sued in this action, including Officer Estrada. This case initially arose out of a traffic stop that occurred at 1.40 in the morning when Officer Estrada saw the plaintiff's car being driven in the opposite direction on El Camino Real. Officer Estrada works in the midnight shift, and he's basically looking for drunk drivers. And as he saw Mr. Liberal and the plaintiff's car drive by, Officer Estrada was stopped. The plaintiff's car was driving 30, 35 miles an hour the opposite direction. And Officer Estrada looked at the car. The back windows were tinted, admitted by plaintiff. And Officer Estrada believed he saw that the driver's side window was also tinted against the laws of the State of California. Officer Estrada has been an officer for many years, has a great deal of experience with making traffic stops. Counsel, in the procedural posture of this case, don't we have to view the evidence in the light most favorable to the opposing party? Yes. And the main dispute that we have is whether the window was up or down. That's correct. And according to the other side, the two made eye contact, and they probably wouldn't do that if the window were actually up. Well, that's certainly Mr. Liberal's opinion. Well, but I guess the issue is, isn't that a question for a jury as to whether there was, in fact, any sighting of the front window at all? I think I understand what you're saying, but I think the issue is what did Officer Estrada believe he saw? Did he have a reasonable suspicion, reasonable articulable grounds upon which he could say, this looks to me like the window is tinted illegally? Now, we're talking about a car coming in the opposite direction, late at night, it's dark outside. On a normally lighted street going maybe 30 miles an hour. Yes. But the point is, one side says the window was down and it's impossible for this to have occurred. I mean, it's not just I was going 20 and he thinks I was going 30. Clearly the car was moving. There's a physical impossibility defense on the other side, or offense, I guess. And why doesn't that create an issue of fact? Well, for example, I cited the case of Raymond C. It was a case that came out of the California Supreme Court just last February. In that case, the officer saw a car without license plates, did not see a temporary tag in the rear window. There was a temporary tag in the front window. The car was perfectly driven legally. But the California Supreme Court held that because the officer could not see the temporary tag, he had a reasonable cause to stop the car to make an investigatory stop. That's the situation here. Didn't Mr. Liberal also testify that he made eye contact? Mr. Liberal testified to that, yes. Okay. Well, if that's true, let's accept that it's true, then how can the officer maintain that the window was up? The officer — The driver says the window was down and I made eye contact when the car — when I went past the officer. Now, if he makes eye contact with the officer, then that sounds to me very close to testimony that I saw the officer and the officer saw me. The officer was looking at the car, absolutely. What did he — did he make eye contact? I was looking at the car in a tinted window. He looked at the driver's eyes. Yes. Yes. Did the — but still, what did Officer Estrada believe he saw? Well, why isn't that a jury question as to whether they believe the officer? Because officer — because Liberal is not in Officer Estrada's mind. Officer Estrada still believes what he saw he saw. Why? But the jury could certainly assess a question if Officer Estrada gets up on the stand and says, all I saw was a tinted window on the driver's side, and he's smirking the whole time he's doing it. A jury might decide, you know something, we understand what Officer Estrada is telling us, but we don't believe a word he's saying. Why isn't that a jury question? Because I think it's important in cases of qualified immunity for the courts to make a determination whether it applies before the trial, if at all possible. You're asking us to accept the officer's version of what happens without an inquiry into his credibility. Well, you have the officer's testimony. You can see what he said. The — the officer maintains that the window that he saw was a tinted window. The back sides of the window, in fact, were tinted. He may have been confused. Okay. Well, he may be. I think you're getting closer to, you know, what may be the issue. Now, there's a Supreme Court case and some cases since about, you know, whether or not the officer made a reasonable mistake of fact. Right? Right. In those cases, you know, then perhaps even though the officer was factually mistaken, the qualified immunity could still be applied. So the question, I think, in this case is, is that kind of mistake, in other words, you know, maybe being charitable, call it a mistake. He mistakenly thought the window was closed, although the window was all the way open. Is that the kind of mistake that should be put into the niche of a reasonable mistake of fact? Well, for example, a case that came out of the — this Ninth Circuit was this, United States, 2000, 213, Fed 3rd, 1216. I cited it in my — before the lower court, and for some reason it wasn't cited in this brief. But in that case, an officer had the mistake that he thought all tinted windows on the car were illegal, and so he pulled the car over. And, in fact, the window was not tinted illegally. Well, that's a — that's a more akin to the example I gave you of how fast is the person driving when it's clear that they're driving. There was no question that the windows were visible. It was only a question of how dark were they, and were they too dark, not dark enough. And here, there's what I refer to as sort of the physical impossibility alternative. And I guess why is it — why would it be reasonable for someone to mistake a completely open window for a closed window? That's really the question we would have to answer. Well, we have to look — he only had a fraction of a second to look at it, a very short period of time. The car was going the opposite direction. He didn't have the luxury of time to go up and walk to the car or, if the car was stopped, to look across the lanes to see and spend more time looking at it. In his glance at the car, he saw what he thought was an illegally tinted window. I think it's inappropriate for him to make an investigatory stop to determine whether that's true or not, if he had reasonable grounds to believe that it was true. I point the courts to a more recent case that came out of the California Court of Appeal just November 30th, just two weeks ago. And in that case, it's People v. Dotson dealing with — Do we have that in our papers? No. Would you, after argument, fill out a gum sheet and leave it with the deputy clerk? In that case, the officer stopped a vehicle. It's similar to the Raymond case where there were no license plates. But in that case, there was a permit in the back window. The officer just didn't see it. You could say, well, how could he have made a mistake if that — if the sticker was there? But the officer didn't see it, and the Court of Appeals held that the fact he didn't see it was a mistake that allowed him to make an investigatory stop. And they held the stop. No, that's — to me, those factual situations are entirely different, you know. I mean, to analogize that case to this case, it would be, you know, for instance, the officer says, no, I stopped because there was no license plate on the car. But there was a license plate on the car. That's the kind of case you're talking about. Can you find a case like that? Well, that's what this — the Dotson case was. Oh, no, they're not arguing about whether the license plate. They're talking about whether the permit was there. I'm talking about a license plate. Well, in this case, there was no license plate. That's what I'm saying. Can you find a case like that? Where there was no license plate? That's the kind of difference, you know, in the perception you're talking about. One side says, no, there was no license plate on the car, because I looked at the license plate hole, it was empty. Just like the officer says, no, you know, I looked at the window, it was up and it was tinted. The other guy says, no, there was a license plate there, and it turns out there was. Right. Well, that's the Dotson — That's the kind of so-called mistake you're talking about. Well, that's right. That's what the Dotson case is, where there was a sticker, and he didn't see it. No, you're talking about, you know, he didn't look at the sticker. He didn't notice it. There's — he's saying, I looked at it, and it was closed. He didn't say, you know, I rested for a tinted window, but I didn't really look at the window. That's not what he's saying. No. He's saying he looked at it, and it appeared to him to be closed. That's what he saw. Right. And it wasn't closed. So you're talking about looking at exactly the same thing and seeing two different, you know, diametrically opposed versions of the same picture. I don't — you haven't signed any case like that to me. No, I haven't found a case like that. Well, I hope not. Okay. I only have 15 seconds left, so I'll end at no reserve time. I think if the Court finds that there was a reasonable cause to stop the car, then the other issues in the case, they change from what Judge Armstrong wrote. Okay. Thank you. Thank you, counsel. Good morning, Your Honors. Tony Boscovich for the Respondent, Kessler, Jr., liberal. I think from your questions, it seems very clear that the Court is focusing on the major issue in the case. The way I would place it is, is what the appellant is asking this Court to do is to apply subjective belief and somehow shoehorn that into an objective standard. It can't be done. And that's the problem. Essentially, in this case, to give you an analogy of — if this is like saying, should an officer be entitled to qualified immunity in a case — in a shooting case where the officer said, I believed I saw a gun, is that — can a court, based on a cold record, entitle — tell the officer that he or she is not — is entitled to not stand trial, not to be sued? The answer is clearly no. That is a jury question. Here, we have evidence that Mr. Liberal says, I made eye contact, the windows are rolled down. The officer, Estrada, says, no, the window was rolled up. But if it wasn't, that's a reasonable mistake of fact. Well, if we allow that, every time, every excuse an officer gives would be a reasonable mistake of fact. Let's go back and just use the hypothetical that Mr. Flegel raised. What if the officer stops and says, do you know why I'm stopping you? I'm stopping you because you haven't got plates. The guy says, what are you talking about? I've got a temporary tag in my back window. And everything ensues and falls apart as it did here. Can you avoid qualified immunity by the plaintiff characterizing the officer's testimony as, I believed I didn't see a temporary tag? No, because the subjective, because if we're going to do it purely, we have to do you have to sit there as three judges, three reasonable people, and say, what would a reasonable officer do? In that case, then, the officer can avoid or cannot avoid trial. So he's not entitled to qualified immunity in the case I just gave you. Just there would probably have to be some more facts with how visible was it, you know, what does it look like. But in general, yes. I haven't looked at the Dodson case. I have looked recently at the Raymond C. case. They actually had a temporary tag case last month. And the California courts have said, you know, it's a reasonable mistake if they stop you, if they stop the car, because they don't think it has a tag. It turns out that the tag's been placed in the front windshield. So the officer says, I didn't think I saw a tag in the car. I understand that. But the California courts aren't the final arbiter of constitutional law. And because they're finding that doesn't mean that this Court is bound by it. In fact, these cases ---- Mr. Carney, you wouldn't have us hold, for example, that Raymond C. is contrary to the Fourth Amendment. No. Because I'm not arguing that case. That case isn't before this Court. I don't know what the facts were in that case. I'm looking at this case. And what I'm asking this Court to do is not be swayed what a California court says in a criminal case or a juvenile case where they're not coming before a court that, quite frankly, deals more frequently with these issues and is determined to be the final arbiter. This Court can't say, if we say that this is reasonable, oh, he could have made this mistake, we'll know. Everybody's entitled to qualified immunity. Everybody would be entitled to qualified immunity. This is clearly a jury question. So I don't ---- I just ---- I resist going to these California cases. Because if I disagree with them, well, that ---- maybe I do. But until it's before a Federal court, I don't know. I don't know how that record was developed. So that's what I'm very, very concerned about in this case. I think if you want to look a little further, though, into the record, if you do want to get into the subjective, take a look at the remainder of the record. Do you ever see a reference to tinted windows afterwards? Never. In the tape. Does Officer Estrada ever mention a tinted window? No. It's always about, you know, you ran, you did this, you know, I don't care, you know, who I piss off. I mean, it's clearly an attitude. And so I know that Wren says that if you've got probable cause or reasonable suspicion for anything, the stop is okay. But the question is, you have to determine at least at this point, could a reasonable officer have had that? And I believe you, if you're going to take a look at the subjective at all, take a look at what happened afterwards and ask yourself, where is tinted windows? It's not there. He wasn't cited for tinted windows. He wasn't arrested for anything. All he was, was he was detained, all right, by an officer for whatever reason, and I'm not even going to go to my personal belief that it was a pretext. He's detained. He's handcuffed. Even after 36 seconds after he's been stopped, they know who he is, where he lives. The officer can determine whether the windows are tinted or not. We're not dealing with that anymore. You're getting out of the car, you're cuffed for a long time. He's being intimidated. He's being asked, are you going to be a gentleman? He says, I just want to go home. And he gets asked that question four times before he'll take the cuffs off. This is about power. This isn't about tinted windows. This isn't about running. This is about power. Everything in this record. We can't, as a matter of law, say that this officer isn't subjected to the scrutiny of a jury. It has to be. If we say that driving by, he's entitled to qualified immunity, I say, heaven help us all, because none of us are safe. So if the Court has any questions, I'd be happy to answer them. Nope. I don't believe that we do. And, Mr. Flegel, you used up your time, but you may have a minute for rebuttal if you want it. You don't? It's up to you. Well, obviously, the – I think the Court has to look – the officers have to have the right to view things and react based on what they see in a split second or in a short period of time and to make the investigatory stop to determine whether or not that person had violated the law, like they reasonably believe they did, that the suspect did. If the officer has to determine ahead of time, conclusively, that there's been a violation of the law, that's more than the Fourth Amendment requires. It requires – the Fourth Amendment only requires unreasonable searches and seizures. And I don't think this was an unreasonable search and seizure. I think the officer had a cause, reasonable cause, articulable facts, and he made the investigatory stop to determine whether he was right or wrong. Thank you, counsel. We appreciate the arguments from both parties. The case is submitted.
judges: Tashima, Graber, Bybee